UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRAUS MCCLOUD,

Petitioner,

v.

DUNCAN MACLAREN,

Respondent.

_____/

Case No. 13-cv-13572

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
CHARLES E. BINDER

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS [1],
DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING
PERMISSION TO APPEAL *IN FORMA PAUPERIS***

**INTRODUCTION**

This matter is presently before the Court on Andraus McCloud's ("Petitioner") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner was convicted in the Genesee Circuit Court of second-degree murder, MICH. COMP. LAWS. § 750.317, armed robbery, MICH. COMP. LAWS. § 750.529, and first-degree home invasion, MICH. COMP. LAWS. § § 750.110a(2). He was sentenced as a fourth habitual offender to concurrent terms of 960-to-1500 months for the murder conviction; 320-to-700 months for the armed robbery conviction; and 320-to-700 months for the home invasion conviction.

Petitioner raises twelve claims in the instant petition for writ of habeas corpus. *See* Dkt. No. 1. For the reasons discussed herein, the Court finds that the claims raised by Petitioner in his petition for writ of habeas corpus are without merit or barred by his state court procedural default. As such, the petition will be **DENIED**. The Court will also **DENY** Petitioner a certificate of appealability, but **GRANT** him permission to proceed on appeal *in forma pauperis*.

-1-

# I. BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review, pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009). In *People v. McCloud*, the Michigan Court of Appeals described the relevant facts as follows:

> Around three a.m. on April 13, 2006, defendant, Tiequan Riley, Charity Mosley, and Christopher Jones traveled in a burgundy sport utility vehicle (SUV) to the house of Benjamin Clemons, who is allegedly known to sell drugs. After arriving at the house, defendant and Riley exited the SUV and went up the house's back steps. Defendant and Riley had each put on plastic facemasks and they proceeded to break into Clemons's home through the back door. Once inside, defendant and Riley searched for drugs and money. According to Riley, an altercation ensued between Clemons and defendant, which led to defendant shooting Clemons. Subsequently, Clemons died. Riley and defendant then returned to the SUV. When back in the car, Riley held up a bag of cocaine and said he "didn't even get a lot from him." Riley had also taken $100 from the house of which he gave defendant $40 and Jones $20, keeping the remainder for himself. While these events transpired, Clemons's girlfriend, who had escaped to the home's lower apartment before Riley and defendant entered the house, had called the police.
>
> As a result, the SUV was almost immediately pulled over by police. Both Riley and defendant, who were sitting in the back passenger seats, got out and fled on foot. Riley was apprehended that same night. A gun and a facemask were recovered along the path upon which Riley fled. Defendant was not apprehended at this time, although Mosley identified defendant in a photograph for the police. The police eventually learned that defendant was in jail on unrelated charges. DNA on a facemask found in the SUV's back passenger seat matched defendant's DNA.

No. 279551, 2009 WL 724115, at *1 (Mich. Ct. App. Mar. 19, 2009).

Following his convictions and sentences, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised what now form his first through sixth habeas claims, as well as a seventh claim not being raised in this action. *See* Dkt. No. 13-3 at 14-72. Petitioner also filed a motion to remand the case to the trial court to settle the trial record. *See id.* at 110-127. The court of appeals granted the motion. On remand, the trial court entered an

order indicating that it had conducted a hearing to settle the record, and it denied Petitioner's motion for a new trial. *See* Dkt. No. 13-2.  After the remand hearing, the Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *See People v. McCloud*, 2009 WL 724115, at *1.

Petitioner returned to the trial court and filed a motion for relief from judgment. *See* Dkt. Nos. 16-19, 16-20. The motion raised what now form his seventh through twelfth habeas claims. *See id.* The trial court appointed counsel to represent Petitioner, and it ordered the prosecutor to file a response to the motion. After holding oral argument, *see* Dkt. No. 16-23 (10-31-2011 Transcript), the trial court denied the motion for relief from judgment. *See* Dkt. No. 16-24 (*People v. McCloud*, No. 06-18520-FC, Order (Genesee Cir. Ct. Dec. 29, 2011)).The court found that review of Petitioner's claims was barred by Michigan Court Rules 6.508(D)(2) and (3), that they lacked merit, and that any error was harmless in light of the overwhelming evidence of Petitioner's guilt. *See id.*

Petitioner next filed an application for leave to appeal in the Michigan Court of Appeals, but it was denied "for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." Dkt. No. 13-7 (*People v. McCloud*, No. 311044 (Mich. Ct. App. Mar. 19, 2013)). Petitioner applied for leave to appeal in the Michigan Supreme Court, but it too was denied under Rule 6.508(D). *See* Dkt. No. 13-8 (*People v. McCloud*, No. 147070 (Sept. 30, 2013) (unpublished table decision)).

## II. DISCUSSION

### A. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2254(d) to impose the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the first prong, "[a] state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). Under this second prong, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To obtain relief under this second prong, a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012). However, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Overall, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979). Thus, in order to obtain habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**B.  LEGAL ANALYSIS**

Petitioner raises the following twelve claims in his petition for writ of habeas corpus: (1) Petitioner's statement to police was involuntary; (2) the juror's identities were kept secret; (3) Petitioner was denied the effective assistance of counsel for failing to object to evidence of Petitioner's prior crimes; (4) Petitioner was denied the effective assistance of counsel for allowing a co-defendant to testify that he had already pleaded guilty; (5) the trial court's malfunctioning recording equipment denied Petitioner his right to a direct appeal; (6) Petitioner's sentence was increased based on his failure to admit guilt; (7) Petitioner's confrontation rights were violated by the admission of hearsay; (8) Petitioners' legal materials were confiscated prior to and during trial; (9) Petitioner's confrontation rights were violated by the admission of a 9-1-1 recording; (10) Physical evidence was tampered with by the authorities; (11) the prosecution

-5-

suppressed exculpatory evidence; and (12) Petitioner was denied the effective assistance of counsel when counsel failed to present exculpatory evidence. Petitioner's first six claims are without merit, while the remaining six claims are barred by his state court procedural default. The Court will address Petitioner's claims in turn.

### 1. Petitioner's claim that the trial court violated his due process rights, by refusing to suppress a statement he gave to a detective, is without merit.

In Petitioner's first claim, he asserts that his statement to police should have been suppressed because the interrogating officer threatened that he would never have contact with his fiancée again, and that she would never go home unless Petitioner gave a statement. *See* Dkt. No. 1 at 6-8. The Court finds that this claim is without merit.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 108-11 (1995). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include: (1) the "crucial element" of police coercion; (2) the length of interrogation; (3) the location of interrogation; (4) the continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect was advised of his

*Miranda* rights. *See Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted). Coercive police activity is "crucial," because without it, a confession should not be deemed involuntary. *Connelly*, 479 U.S. at 167 ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause.").

Under AEDPA, a state court's factual findings undermining a habeas petitioner's claims about the circumstances of his interrogation are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Dyer v. Bowlen*, 465 F.3d 280, 283-84 (6th Cir. 2006). "Indeed, the presumption [of correctness] applies with particular force to credibility determinations, as the Supreme Court has ruled that such determinations receive 'special deference' from the federal courts." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996) (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).

In this case, Petitioner raised his involuntary confession claim in a pretrial motion in the trial court. According to Petitioner, the trial court was confronted with the opposing accounts when adjudicating the pretrial motion. *See* Dkt. No. 1 at 6 ("The testimony of Shanlian and Mr. McCloud directly conflicted over whether Shanlian threatened that Mr. McCloud would never contact again [sic] with Mr. McCloud's fiancée Alicia Hawkins[.]").

Faced with the conflicting accounts, the state trial court found that the voluntariness of Petitioner's statement was not affected by the statements of the officer. *See* Dkt. No. 13-4 at 64-68. Instead, the trial court found "[i]t would appear that [Petitioner] probably had a second thought and thought that maybe he could utilize this as a way to use it as some leverage, actually, against the police to give him the opportunity to speak to Alesha Hawkins." *Id.* at 65-66. Additionally, the court found that Petitioner's restrictive housing did not constitute coercion:

"there's no evidence in his record that, other than the fact that he was in a restricted housing environment, that he was treated any differently than the other inmates." *Id.* at 67.

The trial court listened to the testimony of both the interrogating officer and Petitioner. It then made factual findings that essentially accepted the officer's account of the interrogation, by finding that Petitioner voluntarily reinitiated contact with the detective in an effort to gain access to Hawkins. Given the trial court's findings, the Michigan Court of Appeals decision that Petitioner's statement to police was voluntary did not involve an unreasonable application of the clearly established Supreme Court standard. Section 2254(d) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Thus, following the guidance put forth by Section 2254(d), this Court finds that Petitioner's first claim is therefore without merit.

### 2. Petitioner's claim that the trial court erred by hiding the identity of the jurors during the jury selection process, is without merit.

Petitioner's second claim asserts that it was error for the trial court to keep the identities of the prospective jurors hidden during the jury selection process. *See* Dkt. No. 1 at 8. Petitioner argues that he was prejudiced by the trial court's repeated statements to the jurors that their identities would be kept secret, because Petitioner asserts that the trial court's actions conveyed to the jurors that the court believed Petitioner was dangerous. *Id.*

"Under AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 454 (6th Cir. 2005) (emphasis in original) (internal quotation marks omitted). Identifying clearly established federal law is, thus, the "threshold question under AEDPA." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). In answering this threshold question, a

court must consult "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (internal quotation marks omitted).

Here, Petitioner supports his claim with general appeals to fairness and due process. He claims that referring to jurors by number may have led the jurors to determine "that the trial court had already concluded that Mr. McCloud was guilty of murder and dangerous, and was taking steps to protect jurors so they could render justice, especially in view of allegations that Mr. McCloud had attempted to threaten witnesses and not to testify." Dkt. No. 1 at 8.

While Petitioner cites no authority, Petitioner's counsel relied on a Fifth Circuit case to support Petitioner's argument when in the state courts. Specifically, Petitioner's counsel cited the *United States v. Sanchez*, arguing that it stands for the proposition that the use of anonymous jurors is authorized only in limited and carefully delineated circumstances. *See*, *e.g.*, Dkt. No. 13-4 at 39-41 (citing *United States v. Sanchez*, 74 F.3d 562, 564 (5th Cir. 1996)). However, this Fifth Circuit authority, by itself, does not help Petitioner, because it is not clearly established Supreme Court precedent. *See Williams*, 529 U.S. at 390; *Carey*, 549 U.S. at 74.

Petitioner's anonymous jury claim is, thus, insufficient without clearly established Supreme Court Precedent. As a result, this Court finds that Petitioner's anonymous jury claim does not provide a basis for granting habeas relief. *See Thompson v. Runnells*, 208 F. App'x. 571, 572 (9th Cir. 2006) (finding that a petitioner was not entitled to habeas relief involving his constitutional challenges to the state trial court's use of an anonymous jury, because he failed to show that the California Court of Appeal's decision upholding the use of the anonymous jury was contrary to clearly established United States Supreme Court precedent).

-9-

### 3. Petitioner's ineffective assistance of trial counsel claims lack merit.

Petitioner's third and fourth claims assert that his trial counsel was ineffective. His third claim asserts that his attorney was ineffective for allowing the details of a prior offense to be admitted instead of a more generalized stipulation. *See* Dkt. No. 1 at 9-10. His fourth claim asserts that his counsel was ineffective because he feels his counsel should have objected to co-defendant Riley's testimony that Riley had already pleaded guilty to second-degree murder in connection with the crime. *See id.* at 10-12. Additionally, Petitioner argues that his counsel was ineffective for allowing a defense witness, Sherman Buggs, to testify in jail clothing. *See id.*

Defendants must satisfy a two-prong test to demonstrate that they were denied their Sixth Amendment right to effective assistance of counsel. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-688. In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance." *Id*. at 689. Thus, here, in other words, Petitioner must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. *See id*.

Second, defendants must show that their counsel's performance prejudiced their defense. *Strickland*, 466 U.S. at 687. In order to demonstrate prejudice, the Supreme Court has stated that the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The

-10-

Sixth Circuit has reaffirmed the notion that "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland*, thus, places the burden on the defendant, who raises the claim of ineffective assistance of counsel, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). Accordingly, the burden resides with Petitioner; not the state. *See id.*

In this case, the Michigan Court of Appeals conducted a detailed and well-reasoned analysis of Petitioner's allegations, and it rejected them on the merits *See People v. McCloud*, 2009 WL 724115, at *5-7. As this Court reviews the claims in McCloud's habeas petition, the question is not simply whether the court believes in its own judgment that Petitioner was afforded the effective assistance of trial counsel. *Harrington*, 562 U.S. at 101. The Court must *also* consider whether the fact-specific analysis given by the state appellate court falls within the bounds of reasonable adjudications of Petitioner's claims—a substantially higher threshold. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Knowles*, 556 U.S. at 123 ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). In light of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. at 105. After reviewing the record, and following the guidance put forth by the Supreme Court, this Court finds that the analysis of the Michigan Court of Appeals was not unreasonable.

For example, the Michigan Court of Appeals noted that "the parties had previously stipulated that the underlying charge would not be disclosed to the jury," but "the trial court, nonetheless, read the charge to the jury during preliminary instructions before the prosecution's case-in-chief." *People v. McCloud*, 2009 WL 724115, at *5. Nevertheless, the Michigan Court of Appeals found that it could *not* conclude that "trial counsel's failure to object at this point in the proceedings fell below an objective standard of reasonableness under prevailing professional norms[,]" because "[c]ounsel may have chosen not to object as a matter of sound trial strategy." *Id*. This Court cannot say that the Michigan Court of Appeals finding was unreasonable.

Notwithstanding the conduct of the trial court,  the Court finds that there was likely a sound tactical reason for counsel not to object. It is not uncommon for a defense attorney to forego possible objections of the sort foregone here, because the defense attorney may feel that an objection would only highlight prejudicial information. This is particularly so in circumstances like those Petitioner was facing, where there was overwhelming evidence of Petitioner's participation in the murder, which could easily allow the state appellate court to conclude that Petitioner was not prejudiced.

The Michigan Court of Appeals also rejected Petitioner's claim that his counsel was ineffective by failing to object when the prosecutor purportedly vouched for the credibility of co-defendant Riley. The Michigan Court of Appeals agreed that it would be improper for a prosecutor to vouch for a witness's credibility such that he indicates a special knowledge with respect to the witness's truthfulness. *See People v. McCloud*, 2009 WL 724115, at *6.

However, the Michigan Court of Appeals found nothing in the record indicating the prosecutor used the plea agreement to suggest that she knew Riley was testifying truthfully. *Id.* The Michigan Court of Appeals noted that "simply disclosing that Riley promised to testify truthfully does not by itself constitute misconduct." *Id.* This lead the Michigan Court of Appeals to conclude that "[b]ecause the prosecutor did not engage in misconduct, it cannot be said that defense counsel was ineffective for failing to object. Counsel is not ineffective for failing to raise a futile objection." *Id.* (citations omitted). Again, this Court cannot say that the Michigan Court of Appeals finding was unreasonable.

Again, the Court finds that there was likely a sound tactical reason for counsel not to object. This Court finds that defense counsel adopted a widely used strategy by allowing Riley to testify that he had obtained a plea bargain in exchange for his testimony. This gave defense counsel ammunition to argue that Riley was motivated to place primary blame for the murder on Petitioner. Perhaps the strategy was even successful as Petitioner was not convicted of the firearm charge or first-degree murder, suggesting the jury may have found that Petitioner was guilty under an aiding and abetting theory

Finally, it was reasonable for the state court to conclude that Buggs' appearance in jail clothing did not result in *Strickland* prejudice. After reviewing the testimony that was put forth by Buggs, the Michigan Court of appeals noted that "even if Buggs's [sic] had been wearing different clothing, the testimony itself was unlikely to be a substantial defense in the eyes of the jury." *People v. McCloud*, 2009 WL 724115, at *7. Moreover, with respect to the clothing of Buggs, the Michigan Court of Appeals noted that this also could have been sound trial strategy because "counsel capitalized upon the fact that Buggs's [sic] was wearing prison clothes in an

-13-

attempt to discredit prosecution witness Charity Mosley." *Id.* Once again, this Court cannot say that the Michigan Court of Appeals finding was unreasonable.

The Michigan Court of Appeal's argument about sound trial strategy speaks for itself. *See id.* (noting that "Counsel argued that Mosley was the 'schemer' of the events that occurred and that she, unlike Buggs, 'didn't come in here in an orange outfit. . . .'" This statement drew sympathy for both Buggs and defendant, and may have indirectly bolstered Buggs's credibility.) (internal citations omitted). However, this Court also emphasizes that the nature of Buggs's testimony was only partially exculpatory. Buggs testified that Riley admitted he was the shooter and that Petitioner waited in the hallway. Thus, even to the extent Buggs' testimony impeached Riley's testimony that Petitioner was the shooter, it still supported a theory of guilt that Petitioner aided and abetted the crime. Given the evidence presented against Petitioner, the rejection of Petitioner's ineffective assistance of counsel claims by the Michigan Court of Appeals was not unreasonable.

### 4. Petitioner's claim that he is entitled to a new trial due to missing portions of the trial record, is without merit.

Petitioner's fifth claim asserts entitlement to a new trial due to two gaps in the trial record caused by malfunctioning recording equipment in the trial court. *See* Dkt. No. 1 at 12-14. The Supreme Court has found that a conviction based on "a seriously disputed record, whose accuracy petitioner has had no voice in determining, cannot be allowed to stand." *Chessman v. Teets*, 354 U.S. 156, 164 (1957).

However, the Sixth Circuit has clarified that a transcript failing to capture the entirety of the proceedings "is not a per se denial of [the] due process right to a fair appeal." *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). To demonstrate denial of a fair appeal in the Sixth Circuit, a habeas petitioner must show that prejudice—something more than gross speculation—

resulted from a missing transcript or missing portion of a transcript. *Id.*; *see also Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (citing *Bransford*, 806 F.2d at 86). Although the Sixth Circuit has recognized the difficulty in demonstrating prejudice where the transcripts are missing or incomplete, a habeas petitioner must nonetheless "present something more than gross speculation that the transcripts were requisite to a fair appeal." *Bransford*, 806 F.2d at 86.

Here, Petitioner notes that when his appellate counsel was reviewing the trial record, his counsel discovered that there were two portions of the proceedings that were missing. *See* Dkt. No. 1 at 12. The court of appeals remanded the case to the trial court to settle the record. The missing transcripts included a 31-minute gap in the testimony of a forensic scientist Valerie Bowman, s*ee* Dkt. No. 16-9 at 195-196, and a gap of unknown duration in the afternoon session of Charity Mosley's testimony, *see* Dkt. No. 16-10 at 96.

On remand it was determined that neither of the witnesses could recall the missing portions of their testimony, the prosecutor did not have any notes regarding the missing testimony, and defense counsel's notes were only in outline form. *See* Dkt. No. 16-17 at 26-27, 32. The prosecutor and defense counsel recalled, to the best of their ability, that the forensic scientist testified about a few damaged items that were examined, and Mosley testified that she previously lied in order to distance herself from the crime. *See* Dkt, No. 16-17 at 9-12, 36-37.

Petitioner is thus left to make speculative arguments about whether errors might have occurred during these portions of the proceedings. The Michigan Court of Appeals determined that because the missing portions were a relatively minor portion of the nine-day jury trial, the surviving record was sufficient to allow meaningful evaluation of Petitioner's appellate claims. *People v. McCloud*, 2009 WL 724115, at *8. The state court also found that Petitioner failed to show how he was prejudiced as a result of the missing transcripts. *See id.*

-15-

The decision of the state courts was reasonable. The missing portions of the record were not so significant so as to deny Petitioner the opportunity of meaningful appellate review. Notably, neither defense counsel nor Petitioner recalled or alleged that anything occurring at those points of the trial that might have raised viable appellate issues. Now, however, Petitioner asserts that "[a]ll of Bowman's testimony is crucial to Mr. McCloud's appeal process[.]" *See* Dkt. No. 1 at 13. However, evidence in the record rebuts Petitioner's assertion.

Contrary to Petitioner's assertion that testimony is missing, the state trial court noted that the court had "the entire direct examination [of Valerie Bowman] that was transcribed, [and] the entire cross-examination that was transcribed." Dkt. No. 16-17 at 74.  After conducting its review, the state trial court noted that "[t]here's no proof that there was a redirect examination of Ms. Bowman[.]" *Id.*  The state trial court emphasized that "[t]here appears to be evidence in the record from Mr. Rush's notes, as well as the actual record itself, that would indicate her entire testimony was transcribed because, even by her own testimony, she was on the record for about thirty minutes; and we have thirty minutes of testimony." *Id.*

The state trial court also noted that "even if there were a minute or two that was not transcribed, given Mr. Rush's testimony as well as Ms. Bowman's own testimony, it would have been consistent with the records and the documents and exhibits that would have been admitted; [] there's just nothing in those records, documents or exhibits that would be a bombshell[.]" *Id.* Indeed, this Court emphasizes that "[a]ny time a page is missing from a transcript we cannot assume that reversible error may have been reflected on that page, but rather some modicum of evidence must support such a conclusion." *Bransford*, 806 F.2d at 86. In sum, this Court finds that the decisions of the state courts were reasonable and that Petitioner's claim regarding the missing trial record does not merit habeas relief.

**5.   Petitioner's claim that the state trial court increased his sentenced based on his refusal to admit guilt, is without merit.**

Petitioner's sixth claim asserts that the trial court erroneously increased his sentence because he refused to admit guilt at the sentencing hearing. *See* Dkt. No. 1 at 14-15. The Fifth Amendment protects a defendant's right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Estelle v. Smith*, 451 U.S. 454, 468 (1981) (internal quotation marks omitted). The privilege applies so long as a defendant's compelled testimony could result in further incrimination and ends when such adverse consequences are removed. *Mitchell v. United States*, 526 U.S. 314, 326 (1999).

This principle applies with equal force during sentencing, as "a defendant may have a legitimate fear of adverse consequences from further testimony" where a sentence has not yet been imposed. *Id.* at 326. Where, however, a sentencing court factors a defendant's lack of remorsefulness, as opposed to drawing negative inferences from his silence, there is no violation of the Fifth Amendment. *Miller v. Lafler*, 505 Fed. Appx. 452, 458-459 (6th Cir. Mich. 2012); *In re Cook*, 551 F.3d 542, 551 (6th Cir. 2009) ("It is well established that a defendant's remorse-or lack thereof-is an appropriate consideration in meting out punishment.").

Here, during the sentencing hearing, Petitioner argues that he was "effectively punished . . . for maintaining his innocence" because in imposing Petitioner's sentence the trial court referenced his lack of remorse. *See* Dkt. No. 1 at 15 (citing Sentencing Transcript at 18). Notably, the trial court judge elaborated upon the reasoning for finding that Petitioner showed no remorse after Petitioner purportedly smirked at the mother of the victim:

> I think they convicted him of, what, first degree murder or second degree murder, you know. So, yes, that disturbed me to see someone that cold, who could sit there and smirk at the mother, who's lost her son in that manner; and then I said "[a]nd you didn't show any remorse whatsoever and even when you got up" – because, when he got up and spoke, he showed no remorse. I mean, he didn't say, hey, even though I didn't do this, I'm sorry what happened to your son. He

> showed no remorse whatsoever; and I commented upon it. It had nothing to do with denying him a right to a trial; he got his trial. . . . I sentenced him based on what he did; and to go in a man's house at three o'clock in the morning and shoot him in the head in front of his baby's momma and his baby, in my opinion, entitles him to a stiff sentence. . . . To be honest with you, my thought was I should have exceeded the guidelines, but . . . I'd have an appellate attorney in here saying I was wrong for exceeding the guidelines, so I sentenced him within the guidelines. And so there was no desire on my part to punish him whatsoever.

Dkt. No. 16-15 at 14-15. As such, the record therefore does not indicate that Petitioner's silence was used against him. Instead, the state trial court referred to Petitioner's supposed attitude towards the victim's mother, and it noted that he seemed to lack remorse for the victim. Nothing in clearly established Supreme Court law forbids a sentencing court from considering such factors. *See Miller*, 505 Fed. Appx. at 458-459. "Far from squarely establishing the rule pressed here, the Supreme Court 'expressed no view' on '[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility." *Miller*, 505 Fed. Appx. at 459 (citing *Mitchell*, 526 U.S. at 330). As such, this claim was reasonably rejected by the state court.

### 6. The remainder of Petitioner's claims are procedurally barred.

The remainder of Petitioner's claims were not presented to the state courts during his direct appeal. Rather, he presented them in his motion for relief from judgment and the appeal that followed its denial. Respondent asserts that review of these claims is procedurally barred because Petitioner did not demonstrate adequate cause or prejudice under Michigan Court Rule 6.508(D)(3). *See* Dkt. No. 12 at 72-74. This Court agrees.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural

default, it is unnecessary for the court to reach the prejudice issue. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

With respect to the instant case, Michigan Court Rule 6.508(D)(3) provides that, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom, a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal. The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Dkt. No. 13-7 (State Court of Appeals); Dkt. No, 13-8 (State Supreme Court).

-19-

These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. *See* Dkt. Nos. 13-7, 13-8.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. See *Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). Accordingly, this Court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The trial court, in rejecting petitioner's post-conviction claims, several times indicated that Petitioner failed to satisfy the "good cause" and "actual prejudice" requirement under Rule 6.508(D)(3) for failing to raise his claims during his appeal of right. *See* Dkt. No. 13-6.  Such reliance on Rule. 6.508(D)(3) was "an adequate and independent state ground" on which the state could rely to foreclose review. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).

The fact that the trial judge also discussed the merits of Petitioner's claims in addition to invoking the provisions of Rule 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. *See Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). Consequently, this Court finds that Petitioner's remaining claims that he raised for the first time on post-conviction review are procedurally defaulted.

While Petitioner previously alleged that ineffective assistance of appellate counsel was "cause" to excuse his failure to raise these claims on direct appeal in the state courts, this Court emphasizes that the Sixth Amendment only guarantees a defendant the right to the effective

-20-

assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 463 U.S. at 754. Moreover, "a brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id*. at 463 U.S. at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. See *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

As discussed previously, Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised in his post-conviction motion. Appellate counsel filed a substantial brief on appeal, which

-21-

raised what now form the first six claims raised by Petitioner in his habeas application.  While the claims are without merit, Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising additional claims was deficient. Moreover, for the alternative reasons stated by the trial court in denying post-conviction relief, and for the reasons stated by Respondent in its answer to the petition, none of the claims raised by Petitioner in his post-conviction motion are "dead bang winners." Because the defaulted claims are not "dead bang winners," Petitioner fails to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F. 3d 674, 682-83 (6th Cir. 2000).

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence that would allow this Court to consider the procedurally defaulted claims as grounds for a writ of habeas corpus in spite of the procedural default. Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's defaulted claims on the merits.

Finally, assuming that Petitioner could establish cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims are meritless. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. See *Matthews v. Ishee*, 486 F. 3d 883, 891 (6th Cir. 2007). Again, for the reasons stated by the trial court in its alternative analysis and by Respondent, Petitioner fails to show that his claims have merit. Petitioner's remaining claims are therefore barred by procedural default.

### III. Conclusion

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. Here, the Court concludes that a certificate of appealability is not warranted because reasonable jurists could not debate the Court's assessment of his claims. The Court will, however, grant Petitioner permission to appeal *in forma pauperis*, because an appeal would not be frivolous.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal *in forma pauperis* is **GRANTED**.

IT IS SO ORDERED.

Dated: July 28, 2015

/s/ Gershwin A. Drain_____
Hon. Gershwin A. Drain
United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of
record by electronic and/or ordinary mail.

/s/ Felicia Moses for Tanya Bankston
Case Manager